IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| CASEY MCCLELLAN, INDIVIDUALLY AND DERIVATIVELY AS SHAREHOLDER OF CASO, DOCUMENT MANAGEMENT, INC., A DELAWARE CORPORATION, A/K/A CASO, INC. § § § § § § | § § § § CIVIL ACTION NO. SA19CA1328 OG § |
| PLAINTIFF, | § § |
| V. | § § |
| RICHARD TAMARO, LANA TAMARO, AND CASO DOCUMENT MANAGEMENT, INC., A DELAWARE CORPORATION, A/K/A CASO, INC. | § § § § § |
| DEFENDANTS. | § |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff, Casey McClellan, Individually and Derivatively as Shareholder of CASO Document Management, Inc., a/k/a/ CASO, Inc., files this Original Complaint against Defendants Richard Tamaro, Lana Tamaro, and nominal Defendant CASO Document Management, Inc., a/k/a CASO, Inc., and respectfully shows the Court the following:

**INTRODUCTION AND BACKGROUND**

1. Plaintiff brings this action individually and as the founder and sole holder of duly issued shares of CASO Document Management, Inc., a/k/a CASO, Inc. ("CASO"). Defendant Richard Tamaro has been employed by CASO since at least 2004. Since his early days of employment, Richard Tamaro has sought an ownership interest in CASO. On at least two occasions, Tamaro threatened to resign his

1

employment unless Plaintiff gave him ownership in CASO. While Plaintiff agreed to share CASO profits with Tamaro, Plaintiff never sold or transferred any CASO shares to Tamaro. CASO's Board of Directors never authorized the issuance of CASO stock or shares to Richard Tamaro. Moreover, Richard Tamaro never paid any valid consideration for CASO stock or shares.

2. Since 2011, Richard Tamaro has acted as CASO's Chief Executive Officer. Richard Tamaro controls the financial and business affairs of the company. Under Delaware law, Tamaro owes fiduciary duties to CASO and to Plaintiff, its shareholder. Richard Tamaro has breached his fiduciary duties through multiple acts of self-dealing to the detriment of Plaintiff and CASO. Tamaro's wife, Lana Tamaro, has assisted and participated in the breach of these fiduciary duties. The Tamaros have also engaged in unfair, oppressive and harassing conduct aimed at Plaintiff, violating Tamaro's fiduciary duty, under Delaware law, to deal fairly with CASO's shareholder. Further, the Tamaros have orchestrated fundamental organizational changes aimed at denying Plaintiff all meaningful participation in management and compromising Plaintiff's ability to perform the core functions of his employment with CASO

3. In his personal and derivative capacity, Plaintiff seeks a declaratory judgment that he is the sole holder of duly issued stock in CASO. Further, in his personal and derivative capacity, Plaintiff seeks monetary damages in excess of $500,000.00 against Richard Tamaro and Lana Tamaro, based on Richard Tamaro's breach of his fiduciary duties and Lana Tamaro's aiding and abetting and active participation in her husband's breach of his fiduciary duties. Plaintiff also seeks a

constructive trust over all funds received by the Tamaros as a result of these acts of self-dealing, diversion and/or misappropriation of CASO funds.

## DERIVATIVE ACTION

4. Plaintiff fairly and adequately represents the interests of CASO through this suit. Plaintiff was the founder and was a CASO shareholder at the time of the transactions addressed in this Complaint. Plaintiff remains a CASO shareholder as of the date of this filing. This action is not a collusive action to defer jurisdiction that the Court would otherwise lack.

5. CASO is a closely-held Delaware corporation having less than three shareholders and no shares listed on a national securities exchange or regularly quoted in an over-the-counter market by one or more members of a national securities association. Plaintiff has not taken any action, including written demand, to obtain the desired action from the Board of Directors or Chief Executive Officer, Defendant Richard Tamaro, because such action would be futile. *See*, Fed. R. Civ. P. 23.1.

## PARTIES

6. Casey McClellan ("Plaintiff") is the founder and shareholder of CASO, and he resides in Austin, Travis, Texas. McClellan has served as President of CASO and, since 2016, has operated out of CASO's San Antonio, Texas office.

7. Defendant Richard Tamaro ("Defendant" or "Tamaro") is a resident of Rockville Centre, New York. Pursuant to Fed. R. Civ. P. 4(e)(1) and Tex. Civ. Prac. & Rem. Code Sections 17.026(a) and 17.044 (b), citation may be served on the Texas Secretary of State by certified mail, return receipt requested, which shall serve Richard Tamaro by mail to his residence at 77 Shellbank Pl., Rockville Centre, New York 10001.

8. Defendant Lana Tamaro is a resident of Rockville Centre, New York. . Pursuant to Fed. R. Civ. P. 4(e)(1) and Tex. Civ. Prac. & Rem. Code Sections 17.026(a) and 17.044 (b), citation may be served on the Texas Secretary of State by certified mail, return receipt requested, which shall serve Lana Tamaro by mail to her residence at 77 Shellbank Pl., Rockville Centre, New York 10001.

9. Nominal Defendant CASO is a Delaware Corporation. CASO is authorized to do business in the State of Texas and may be served through its registered agent for service, Casey McClellan, at 1405 Desert Quail Lane, Austin, Texas 78758.

**JURISDICTION AND VENUE**

10. This Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000, excluding interest and costs.

11. This Court has personal jurisdiction over Richard Tamaro, Lana Tamaro and CASO. By Certificate of Authority issued by the State of Texas, CASO is authorized to do business in the State of Texas and is doing business in the State of Texas through its office in San Antonio, Bexar County, Texas. Richard and Lana Tamaro both purport to be officers of CASO and actively direct CASO operations, employees and agents within the State of Texas, through CASO's office in San Antonio, Bexar County, Texas. In 2011, CASO and Richard Tamaro consented to general personal jurisdiction through another lawsuit arising from Richard Tamaro's oppressive actions, C.A. No. SA-11-CA-0874-OG, *Timothy Peters, Individually v. Richard Tamaro, Individually, et al.*

4

12. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in San Antonio, Bexar County, Texas.

**STATEMENT OF FACTS**

13. CASO is a Delaware S-Corporation specializing in enterprise content management, business process automation and fully managed scanning services. Plaintiff founded CASO in 1998. Pursuant to CASO's Bylaws:

- Certificates representing stock in CASO must be authorized by the Corporation through its Board of Directors, and all certificates representing stock in the corporation shall be signed by the Corporation; and

- Any transfers or registration of transfers of shares of stock of the Corporation shall be made only on the stock ledger of the Corporation by the registered holder of the shares and filed with the Secretary of the Corporation.

CASO Bylaws, Art. I, Sections 1 and 4. Also in 1998, the Board of Directors authorized the issuance of 20 shares of CASO stock to Plaintiff for $500.00, and 20 shares were issued to Plaintiff, as evidenced by CASO Share Certificate No. 1. Since that time, the CASO Board of Directors has not authorized the issuance of any other share certificates of CASO stock, and the Board of Directors has not authorized the issuance of uncertificated shares in CASO.

14. In 2004, Plaintiff hired Richard Tamaro, as Chief Operating Officer, and Timothy Powers ("Powers"), as Chief Information Officer. Later in 2004, CASO's primary customer terminated its contract with CASO, and Tamaro and Powers threatened to quit unless Plaintiff agreed to "make an ownership change." Fearing that he could not rebuild CASO alone, Plaintiff entered into an agreement with Tamaro and Peters, drafted by Tamaro ("2005 Agreement"), agreeing to share CASO's future profits with Tamaro

5

and Powers and give Tamaro and Powers "ownership" in CASO. Tamaro and Peters gave Plaintiff no valid consideration for the 2005 Agreement.

15. In 2007, Peters became CASO's Chief Executive Office, with Plaintiff remaining as CASO's President.

16. In January 2008, CASO, Plaintiff, Richard Tamaro and Peters entered into a "Shareholders' Agreement" ("January 2008 Agreement"). The January 2008 Agreement guarantees employment to each "Shareholder" for "so long as he is a Shareholder of the Corporation." The January 2008 Agreement also provides that each "Shareholder" was entitled "to draw compensation, as voted upon them from time to time."

17. In late August or early September 2008, Richard Tamaro and Peters again threatened to quit the Company unless Plaintiff entered into an agreement outlining a plan to transfer the majority of Plaintiff's CASO stock to them. Pressured by Tamaro and Peters, Plaintiff entered into a Stock Purchase Agreement on September 3, 2008, agreeing that he, as "Seller," had the option to sell and transfer to Richard Tamaro and Peters, as "Buyers," up to 280 shares each ("September 2008 Stock Purchase Agreement"). Seller agreed to a schedule for his potential stock transfer and sale ("delivery dates"), provided that Tamaro and Peters would pay Plaintiff on the "delivery dates" a total of $221,880.00 ("Purchase Price") and pay Plaintiff the Purchase Price by certified or cashier's check.

18. Also on September 3, 2019, Plaintiff, Tamaro and Peters executed a separate Shareholders' Agreement, agreeing to "continue their practice of ensuring that [Plaintiff], as company founder, maintains a salary differential over those of Tamaro and Peters."

6

19. Plaintiff never opted to sell or transfer any of his CASO shares to Tamaro or Peters, and neither Richard Tamaro nor Peters paid Plaintiff the Purchase Price, any cash or valid consideration for Plaintiff's CASO shares.

20. In 2011, Peters was replaced with Tamaro as CEO of CASO, while Plaintiff remained as CASO's President. Shortly thereafter, Tamaro fired Peters and sent a letter to Peters offering for CASO to purchase Peters' purported CASO shares. In October 2011, Peters sued CASO, Richard Tamaro, and Plaintiff ("Peters Suit"), asserting breach of fiduciary duty, based primarily on Tamaro's oppressive conduct surrounding Peters' termination. In 2013, Peters agreed to sell his claimed 43% share interest back to CASO, and he dismissed the lawsuit. As part of a confidential settlement, CASO paid Peters for his claimed CASO interest, but no transfer of CASO stock from Peters to CASO occurred or was recorded on the CASO stock ledger.

21. After taking over as CASO's CEO and firing Peters, Richard Tamaro took complete control of all corporate decision-making and company operations. Without informing Plaintiff or obtaining Plaintiff's or the Board of Directors' consent, Richard Tamaro hired his wife, Lana, a mental health counselor and receptionist, to be CASO's Executive Vice President. Since CASO's early days, ADP handled all of CASO's human resources functions, including counseling and payroll. In early 2016, despite ADP's role, Richard Tamaro added an additional title to his wife Lana's resume, declaring her CASO's Vice President of Human Resources and increasing her pay by 150% for human resources functions that she neither performs nor is qualified to perform. Later in 2016, Richard Tamaro doubled Lana's salary (that he raised by 150% only five months before),

7

vesting wife Lana with the additional titles of Business Manager and Head of Marketing for CASO.

22. Also in late 2016, Richard and Lana Tamaro engaged in further self-dealing, through a scheme to defraud CASO and Plaintiff. The Tamaros disguised payments from CASO to themselves by diverting CASO funds to The Right Business Solution, a company owned by Lana. The Right Business Solution has no written vendor agreement with CASO and provides no measurable services for CASO. From November 2016 through the present, the Tamaros have authorized and diverted payments to themselves through monthly payments and annual "bonuses" to Lana's company, The Right Business Solution. Additionally, Richard and Lana Tamaro have authorized and CASO payments to The Right Business Solution, thereby diverting CASO funds to themselves for cleaning and utilities associated with the Tamaro's home as well as "rent" payments for the Tamaro's home. Since November 2016, Richard and Lana Tamaro have diverted over $400,000.00 in CASO funds to themselves through the Right Business Solution for the sole benefit of themselves and to the detriment of CASO and Plaintiff, CASO's shareholder. Despite their claim of a "home office," little to no business activities are conducted at or through the Tamaro's home.

23. Without informing Plaintiff or obtaining Plaintiff's or the Board of Directors' consent, Richard Tamaro and Lana Tamaro have engaged in fundamental organizational changes secretly and in bad faith, denying Plaintiff all meaningful participation in management, harassing and directing others to harass Plaintiff, and depriving Plaintiff of his shareholder and employee rights. The Tamaros have implemented employee rules and procedures that they insist Plaintiff follow, despite the

8

terms of Plaintiff's employment set out in the January 2008 Agreement. The Tamaro's have launched several disciplinary proceedings against Plaintiff, accusing him of a various employment violations. Repeatedly and as a pretext for terminating Plaintiff's employment with CASO, Richard Tamaro, his wife Lana and those acting at their direction and on their behalf have denied Plaintiff his authority to supervise CASO operations and employees, questioned Plaintiff's fitness for employment, and challenged Plaintiff's loyalty to CASO.

24. In 2017, Richard and Lana Tamaro informed Plaintiff that he would no longer be entitled to use the Company credit card and that his Company car would be taken from him. Thereafter, Richard and Lana Tamaro imposed a new Company "policy," that business expenses exceeding $2,500.00 per month would not be reimbursed. As of the date of the filing this lawsuit, Richard and Lana Tamaro have failed and refused to reimburse Plaintiff for valid employment expenditures exceeding $54,000.00. Plaintiff's business travel expenses are necessarily significant, since his job requires extensive travel to serve existing clients and market new clients. Richard and Lana Tamaro's failure and refusal to reimburse Plaintiff's business expenses significantly impair Plaintiff's ability to perform the core functions of his work on CASO's behalf.

25. Richard Tamaro and Lana Tamaro have engaged in numerous other acts of oppression and harassment against Plaintiff, clearly aimed at forcing Plaintiff to resign his employment and his interest in CASO. These acts of harassment include:

- Threatening to terminate Plaintiff if he refused to sign off on a new Employee Handbook that does not govern the terms of his employment;

- Ordering Plaintiff to pay corporate counsel expenses associated with his refusal to comply with their demand that he sign the CASO Employee Handbook;

- Hiring an office manager in the San Antonio office (over Plaintiff's objections) and granting the office manager authority over Plaintiff. Based on Richard and/or Lana Tamaro's express instructions, the office manager has:

    o Taken company actions without Plaintiff's consent and/or in defiance of Plaintiff's directives;

    o Reported all activities of the San Antonio office directly to Lana Tamaro;

    o "Written up" and/or threatened to "write up" Plaintiff for purported actions that do not impinge on his work performance and that are contrary to his rights as an employee pursuant to the January 2008 Shareholders' Agreement;

    o Prevented Plaintiff from attending company-wide meetings;

    o Interfered with Plaintiff's client interactions, for which Plaintiff has been reprimanded by Richard Tamaro; and

    o Refused to respond to Plaintiff's requests for information concerning client deliveries, for which Plaintiff has been reprimanded by Richard Tamaro.

26. Beginning in 2017, Richard Tamaro began taking unilateral corporate action concerning Plaintiff's compensation and distributions, shareholder status, and authority:

- In 2017, Tamaro insisted that he owns 75% of CASO and is entitled to make all decisions concerning distributions and that Plaintiff would no longer serve as CASO's President. Tamaro also rejected Plaintiff's demand to redistribute CASO ownership in keeping with the parties' previous agreements.

- In 2017, Tamaro authorized 2017 salary payments to himself totaling $302,291.00 and authorized 2017 CASO profit distributions to himself totaling $66,000.00, while authorizing 2017 salary payments to Plaintiff totaling $271,587.00 and authorizing 2017 CASO profit distributions to Plaintiff totaling $21,141.00.

- In 2018, Richard Tamaro authorized salary payments to himself totaling $258,022.00 and authorized 2018 CASO profit distributions to

himself totaling $345,015.00, while authorizing salary payments to Plaintiff totaling $255,000.00 and authorizing 2018 CASO profit distributions to Plaintiff totaling $115,005.00.

- As of June 30, 2019, Richard Tamaro has authorized 2019 CASO profit distributions to himself totaling $183,000.00, while authorizing 2019 CASO profit distributions to Plaintiff totaling $61,000.00.

- In early 2019, Tamaro unilaterally rejected an offer by InStream to purchase all outstanding CASO stock.

## COUNT ONE

### Declaratory Judgment
### (Asserted by Plaintiff, individually and derivatively on behalf of CASO, against Richard Tamaro)

27. Plaintiff incorporates by reference the allegations contained in the paragraphs above as if set forth herein.

28. A justiciable controversy exists concerning whether Richard Tamaro is a holder of duly issued CASO stock. Richard Tamaro maintains that he owns 75% of the issued shares of CASO stock. However, Plaintiff never sold or transferred any duly issued CASO stock to Richard Tamaro, and there is no corporate record that any such shares were ever transferred to Tamaro or are presently held in his name. Further, Richard Tamaro never paid for any CASO shares or stock with cash or other valid consideration. Additionally, CASO never authorized in writing the issuance of stock or uncertificated shares to Richard Tamaro. Therefore, Plaintiff seeks a declaratory judgment that:

- There are only 20 duly issued shares of CASO stock; and

- Plaintiff is the sole authorized holder of CASO stock.

## COUNT TWO

## Breach of Fiduciary Duty

**(Asserted by Plaintiff, Individually and Derivatively on behalf of CASO, against Richard Tamaro)**

29. Plaintiff incorporates by reference the allegations contained in the paragraphs above as if set forth herein.

30. Under Delaware law, Richard Tamaro, as the Chief Executive Officer of CASO, owes both Plaintiff and CASO the duty of loyalty. Richard Tamaro is prohibited by Delaware law from engaging in self-dealing, and he is obligated to act in good faith and in a manner that is in the best interests of CASO and all stockholders. He is obligated by Delaware law to refrain from conduct that would injure CASO and its stockholders and to refrain from conduct that would deprive CASO or its stockholders from profit or advantage. When making decisions on behalf of the Company, Richard Tamaro is prohibited by law from allowing his own financial interest or any other self-interest to take precedence over the interests of CASO and its stockholders. Further, as part of his duty of good faith, Richard Tamaro is obligated to act in good faith in his oversight of the Company.

31. Richard Tamaro breached his fiduciary duties to CASO and to Plaintiff by engaging in multiple acts of disloyalty, self-dealing, and bad faith, including:

- Making unilateral salary and compensation decisions for himself and Plaintiff, to the benefit of himself and detriment of Plaintiff and CASO, without Plaintiff's or Board of Directors' action, consent or knowledge;

- Making excessive distributions to himself without Plaintiff's or Board of Directors' action, consent or knowledge, severely threatening the liquidity of CASO;

- Hiring and paying with CASO funds his wife, Lana Tamaro, as Executive Vice President and later as Human Resources Manager and Business Manager without Board or shareholders' consent or knowledge, thereby

12

increasing Tamaro's profits in CASO by hundreds of thousands of dollars to the detriment of CASO;

- Diverting CASO funds to themselves, through payments to Lana's company, The Right Business Solution;

- Diverting CASO funds to themselves through the payment of "rent," cleaning expenses, and other expenses associated with the Tamaros' residence;

- Taking oppressive and harassing actions and/or authorizing others to take such actions to squeeze Plaintiff out of management and terminate Plaintiff's employment by pretext;

- Imposing Company Policies designed to impair Plaintiff's ability to perform the core functions of his employment; and

- Refusing to pay Plaintiff his reimbursable business expenses.

Under Delaware law, Richard Tamaro bears the burden of establishing entirely fair treatment of Plaintiff and CASO in all aspects of the transactions described above.

32. Richard Tamaro's wrongful conduct damaged Plaintiff and CASO. Plaintiff, on behalf of himself, individually and, derivatively, on behalf of CASO, seeks all equitable remedies available under law. Further, Plaintiff requests on behalf of himself and CASO actual damages caused, brought about or contributed to by Richard Tamaro's wrongful conduct, including but not limited to out-of-pocket, benefit of the bargain, special, consequential, incidental and lost profits damages, as well as exemplary damages as allowed by law.

## COUNT THREE

### Knowing Participation in and Aiding and Abetting Breach of Fiduciary Duty
**(Asserted by Plaintiff, individually and derivatively on behalf of CASO, against Lana Tamaro)**

33. Plaintiff incorporates by reference the allegations contained in the paragraphs above as if set forth herein.

13

34. Lana Tamaro knowingly participated in and aided and abetted actions taken by Richard Tamaro in violation of his fiduciary duties owed to CASO and to Plaintiff as a CASO shareholder, as described above in Count Two of this Complaint. Lana Tamaro is, therefore, liable to CASO and Plaintiff for all actual damages caused, brought about or contributed to by her knowing participation and aiding and abetting in Richard Tamaro's breach of fiduciary duties as described above, as well as exemplary damages.

## COUNT FOUR

### Unjust Enrichment
**(Asserted by Plaintiff, individually and derivatively on behalf of CASO, against all Defendants)**

35. Plaintiff incorporates by reference the allegations contained in the paragraphs above as if set forth herein.

36. As described above, Defendants have breached and knowingly participated in the breach of fiduciary duties owed to CASO and Plaintiff personally. As a direct and proximate result of Defendants' conduct, Defendants have been unjustly enriched, to the detriment of CASO and Plaintiff personally. The exact sums by which Defendants have been unjustly enriched are solely within Defendants' knowledge.

## COUNT FIVE

### Constructive Trust
**(Asserted by Plaintiff, derivatively on behalf of CASO, against All Defendants)**

37. Plaintiff incorporates by reference the allegations contained in the paragraphs above as if set forth herein.

38. Upon a finding of Defendants' breach and knowing participation in the breach of fiduciary duties and unjust enrichment, a constructive trust should be imposed upon all funds received by Richard Tamaro and Lana Tamaro as a result of their self-dealing, diversion and/or misappropriation of CASO funds.

WHEREFORE, Plaintiff Casey McClellan, individually and derivatively on behalf of CASO Document Management, Inc.,, a/k/a CASO, Inc., requests that the Court grant judgment for Plaintiff and award Plaintiff declaratory relief, actual damages, equitable relief, exemplary damages, and court costs and such other and further relief, at law or in equity, to which Plaintiff is entitled.

Respectfully Submitted,

**HANCE SCARBOROUGH, LLP**
400 W. 15th Street, Suite 950
Austin, Texas 78701

By: Thomas Tourtellotte
State Bar Number: 20151650
512) 479-8888 (Telephone)
(512) 482-6891 (Facsimile)
Email: ttourtellotte@hslawmail.com

*Attorneys for Casey McClellan, Plaintiff, Individually and Derivatively on behalf of CASO Document Management, Inc., a/k/a CASO, Inc.*